PINGREE v. McDUFFIE.

*Way of necessity.*

A party having conveyed a portion of his land over which was the only
means of access to the remaining land—*Held*, that a right of way by
necessity to the remaining land was reserved.

FROM ROCKINGHAM CIRCUIT COURT.

TRESPASS, *qu. cl. fr.*, for breaking and entering the plaintiff's close,
situate in Auburn,—marked B on the plan hereto annexed,—between
July 1, 1873, and August 14, 1873, and depasturing his · grass, and
damaging his crops by his cattle and teams. Plea, the general issue,
with a brief statement claiming a right of way by prescription and of
necessity. The action was referred to a referee, who reported as fol-
lows:

"It appeared that one Rufus Anderson owned for many years the
premises shown on said plan marked A and B; that there was for
more than fifty years a path across said premises, known as the Ander-
son path, as shown on said plan, leading from a point below the
Candia road to Hook's, on the turnpike, over which persons travelled
on foot and with teams without objection, and was used by meadow
owners to get out their hay, either in the direction of Hook's or the
opposite direction; that at each end of the path, and wherever it
crossed the boundary lines of the several owners, bars were main-
tained. I find that it was thus used without objection; but I do not
find that the meadow owners acquired a right of way by prescription,
or otherwise, except of necessity.

"Rufus Anderson conveyed lots A and B to his son, George W. An-
derson, prior to 1851. In 1851 George W. Anderson conveyed lot B
to one Dearborn, without reserving a right of way across from the Can-
dia road to lot A. At the time of the conveyance he said to Dearborn,
"I am depriving myself of a right of way to get off my land;" and
Dearborn replied, "There will be no trouble as long as we live."
January 21, 1857, George W. Anderson conveyed lot A to the defend-
ant, Stephen McDuffie. At the time of the conveyance McDuffie wanted
Dearborn to have it inserted in his deed, that he, McDuffie, had the
right to pass over Dearborn's land; which Dearborn declined to do, but
said, "There will be no trouble as long as you and I live." Dearborn
died prior to May 6, 1867. His heirs conveyed lot B to Arthur S.
Hook, May 6, 1867, and Hook to the plaintiff, February 8, 1870. In
neither deed was any mention made of the right of way of the defend-
ant over the premises. When the defendant bought lot A in 1857, it
was covered with a maple growth, and had never been mowed. The
defendant cleared the land the first year, and in three years after com-
menced to mow it, and has mowed it every year since when not too

wet, and drawn the hay out over lot B, on the Anderson path, without objection, till 1873. In 1872 the meadow was wet, and was not cut, nor in 1874. In 1873 the plaintiff ploughed up a portion of his lot, including the Anderson path. The defendant asked permission of him to cross his land to get off his hay, which the plaintiff refused, and forbade his crossing. The Anderson path never was ploughed up before 1873. The defendant drew out his hay in 1873 over the plaintiff's land, keeping as near the margin of the ploughed land as the low wet land would allow ; and, in so doing, his team passed over the outer row of potatoes there growing. The defendant had no way of getting off his land, except over the land of an adjoining owner : he could not pass out over the Anderson path towards Hook's without first coming on to the plaintiff's lot.

Lot C is meadow, and impassable for teams. The distance out by way of Hook's to the defendant's house is a mile and a half greater than by way of Candia road.

I find the law to be, that the defendant had a way of necessity over the plaintiff's land ; and therefore I find for the defendant, and that he recover costs of reference and costs of court, to be taxed by the court. But if the court should be of opinion that the defendant had not a way of necessity across the plaintiff's land, then I find for the plaintiff, and that he recover one dollar damages, and costs of reference and costs of court, to be taxed by the court.

The questions arising upon said report were transferred to the superior court for determination by SMITH, J.

*Cross & Burnham*, for the plaintiff.

*Morrison & Hiland*, for the defendant.

CUSHING, C. J.    Chancellor KENT (3 Kent's Com. Dig. 422) says,— "The weight of authority is, that the grantor has a right of way to his remaining land, in case of necessity, when he cannot otherwise approach his land.    The law presumes a right of way reserved, or, rather, gives a new way, from the necessity of the case, and the new right of way ceases with the necessity for it.    This principle of law has been for a long time recognized."    He cites *Packer* v. *Wellstead*, 2 Sid. 39, *Dutton* v. *Taylor*, 2 Lutw. 1487, and *Howton* v. *Frearson*, 8 T. R. 50. In this latter case, Lord KENYON cites and recognizes the binding force of *Dutton* v. *Taylor*.    The same doctrine is recognized by SHAW, C. J., in *Bowen* v. *Conner*, 6 Cush. 132.

The doctrine, which appears very reasonable, is also recognized and well settled by the above authorities.

LADD, J., concurred.

* RAND, J., C. C.    In 1851 George W. Anderson owned lots A and B. In that year he sold lot B to one Dearborn, whose heirs, May 6, 1867, sold to one Hook, who sold to the plaintiff February 8, 1870.    January 21, 1857, George W. Anderson sold lot A to the defendant.    There was no reservation of a right of way over lot B in favor of lot A ; but the defendant had no way of getting off his land except over lot B, as I understand the referee's report.    The authorities sustain the position that there was a way of necessity over lot B.    See authorities cited in 2 Bouv. Law Dict. 637.

*Judgment on the report.*